UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ANTHONY BROWN,

                    Plaintiff,                              Case No. 2:11-cv-291

v.                                                          Honorable R. Allan Edgar

B. MERCIER, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## **Factual Allegations**

Plaintiff Anthony Brown, an inmate at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff names Defendants Resident Unit Manager B. Mercier, Assistant Resident Unit Supervisor F. Governor, Resident Unit Officer Unknown Etelemaki, Resident Unit Officer Unknown Corkin, Resident Unit Officer Unknown Doney, Corrections Officer Unknown Sharrett, Hearing Officer Thomas O. Mohrman, and Executive Director Unknown Party.

In his complaint, Plaintiff alleges that from October 10, 2010, to March 1, 2011, Plaintiff was denied participation in the "Inmate in Segregation Program" (IISP) by Defendants Mercier, Governor, Etelemaki, and Corkin because Plaintiff is black. Plaintiff asserts that two white inmates, Boyer and Selby, were advanced to the highest level of the program during the same time period. In support of this assertion, Plaintiff attaches copies of the grievance, appeals and responses for grievance number MBP-110100243292. (Plaintiff's attachments #1-#5.) In his grievance, Plaintiff asserted racial discrimination. At step II, Assistant Warden James Alexander responded:

> As it states in your Step I response, your behavior has been properly documented in the Incentives in Segregation Program progress report. Based on these progress reports, prisoner's increase (at different rates) through stages accordingly. [Assistant Resident Unit Manager] Govern has been contacted in which he indicated you were increased to stage III on 2/7/11 and should be at stage IV in the near future, dependent on positive behavior. He has also advised that staff has been following the program in accordance with DOM 2010-7. Let it be noted that according to the IISP Program Manual a prisoner must earn each stage increase one stage at a time. No violation of policy exists, grievance denied at step II.

(Plaintiff's attachment #2.)

Plaintiff alleges that on March 25, 2011, Defendant Doney took the loaner television set provided to Plaintiff by the IISP because Plaintiff refused to sign off on a grievance he had filed

asserting racial bias.  Plaintiff filed grievance MBP-110400884171 on Defendant Doney.  In the step

I response, Assistant Resident Unit Manager C. LaCount states:

> I spoke with [Resident Unit Officer] Doney in regards to prisoner brown's [sic]
> complaint.  On 3/25/11 prisoner Brown was extremely loud and argumentative with
> staff and other prisoners.  This prisoners [sic] behavior lasted for about an hour and
> was warned several times to hold the noise down.  Prisoner Brown was at stage IV
> in the Segregation Incentives Program and was in possession of a loaner TV supplied
> by MBP.  Do [sic] to his behavior, his stage level was dropped from level IV to level
> I and the TV was removed, as loaner TV's are not supplied to prisoners below stage
> IV.  In accordance with the Incentives in Segregation Program manual, DOM 2010-7,
> no misconduct is necessary to downgrade a prisoners [sic] stage.  All behavior was
> properly documented in the unit log book and prisoner Brown's IISP progress report.

(Plaintiff's attachment #7.)

In the step II appeal response, Assistant Warden James Alexander noted that

Plaintiff's behavior had been loud and disruptive and after the step I response had been issued,

Plaintiff continued his disruptive behavior and received a class II misconduct on April 14, 2011.

(Plaintiff's attachment #8.)  On April 15, 2011, Defendant Sharrett turned the water off in Plaintiff's

cell from 6 a.m. until 2 p.m. in an effort to force Plaintiff to drop his complaints against staff.

Plaintiff states that his toilet smelled of feces and urine because he could not flush it.  In addition,

Defendant Sharrett falsified a misconduct ticket on Plaintiff in retaliation for writing a grievance

about his water being turned off.  On April 21, 2011, Defendants Mercier met with Defendant

Mohrman in order to influence Defendant Mohrman's findings.  Plaintiff asserts that they did this

in retaliation for the racial discrimination complaint filed by Plaintiff on January 31, 2011.

On May 2, 2011, Defendant Mohrman denied Plaintiff a fair and impartial hearing

and found him guilty of the misconduct.  According to the misconduct report written by Defendant

Sharrett on April 15, 2011, Plaintiff called him a blue-eyed demon and told him that if he did not get

Plaintiff's hot water working, he would "fuck this place up and you demon." (Plaintiff's attachment #21.)  In the hearing report, Defendant Mohrman indicated that the following was considered as evidence / statements in addition to the misconduct report:

> Oral by prisoner at hearing.  No.  I did not say that.  The psyche was right there.  He thought I was writing a grievance so he wrote this.  The prisoner then presented a prepared statement and had questions for the psychologist.  The statement was read and added to the record.
>
> The prisoner had not requested an investigation at review but now does.  He is classified to administrative segregation making this a 14 days misconduct.  Hear on or before May 5, 2011.  Obtain video of incident.  Ask Psychologist if he was present and if he heard the prisoner make the statement to the reporter.  HO Mohrman 4-21-11.
>
> 5-2-11 reconvened with the prisoner present; record reviewed with the prisoner.
>
> The prisoner said he was in the cell and that the psychologist came into the unit and then went to talk with the officer.  He did talk to the prisoner in an adjacent cell as well.
>
> Statement of the psychologist read.  The video was seen outside the prisoner presence and remains confidential as to show prisoner would allow him to ability [sic] of fixed mounted cameras and compromise security.
>
> The prisoner was told findings and issued a sanction.  The report was then typed out of his presence.

(Plaintiff's attachment #22.)

> In the reasons for the findings, Defendant Mohrman noted:
>
> The prisoner is guilty of threatening behavior.  I base this upon the report which is logical and persuasive as well as the video which supports the report even though it has no audio.  The reporter is seen marking segregation cards on Base.  The prisoner is at the cell bars above him and the reporter backs up and the prisoner is talking to the officer.  I find the prisoner told the officer he was a blue eyed devil and had better get his hot water working or he would fuck up this place and him.  This expressed his intent to attack and injure the officer as the term to fuck up someone means to injure and abuse the other.  The report does not conflict with the statements

- 4 -

of the psychologist who is not seen in the video at the same time.  The psychologist may well have been in the unit at the same time or just before or after the exchange indicated above.  The prisoner in his statement indicated the psychologist spoke to his neighbor a few minutes at or about 1:40 to 1:45.  This was about 15 minutes after the exchange the prisoner had with the reporter.  It may be he had this exchange and then when the psychologist came he again called to the officer and had a second exchange.  In any event, the prisoner made this statement to the reporter and the psychologist is not in the video at that exact moment.

(Plaintiff's attachment #22.)

As part of the hearing investigation report, Psychologist P. Eyke stated that he heard Plaintiff ask Defendant Sharrett if his water could be turned back on and also heard him ask for a grievance.  (Plaintiff's attachment #24.)  On June 2, 2011, Defendant Sharrett asserted that Plaintiff had been offered a water break on April 15, 2011, thereby admitting that the water had been turned off.  In the step II response to Plaintiff's grievance on this issue, Warden Robert Napel stated that the incident had been investigated by Sergeant Dauphinais, who concluded that there was no evidence that Plaintiff had been denied water and that he had refused a water break when it was offered.  (Plaintiff's attachment #18.)  Plaintiff alleges that Defendant Unknown Executive Director failed to properly train Defendant Mohrman.  Plaintiff seeks damages.

## Discussion

### I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants discriminated against him on the basis of his race. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is

- 6 -

essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. In this case, Plaintiff alleges that two white prisoners were advanced to stage V of the IISP program but that staff refused to advance Plaintiff in the same manner. (Plaintiff's attachment #1.) Plaintiff asserts that because he is black, that must be the reason for Defendants' disparate treatment of Plaintiff with regard to the IISP. However, Plaintiff fails to allege facts showing that the two white inmates were otherwise similarly situated to Plaintiff. Defendant Govern reported that Plaintiff was increased to stage III on February 7, 2011, and should be at stage IV in the IISP in the near future, dependent upon Plaintiff's positive behavior. (Plaintiff's

- 7 -

attachment #3.)  On March 25, 2011, Plaintiff was at stage IV in the IISP program.  Plaintiff was loud and argumentative with staff and other prisoners for about one hour despite repeated warnings to hold the noise down.  As a result, Plaintiff was dropped to stage I in the IISP program and his loaner television set was removed from his possession.  (Plaintiff's attachment #7.)  Plaintiff received a misconduct ticket on April 14, 2011, but continued with disruptive behavior.  (Plaintiff's attachment #8.)  Plaintiff fails to allege any facts showing that the white inmates he mentions were engaged in similar misconduct.  As noted above, persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Because Plaintiff fails to show that he was similarly situated that the white prisoners who were advanced to stage V of the IISP program, his equal protection claims are properly dismissed.

Plaintiff also claims that Defendants' acted in retaliation for Plaintiff's use of the grievance system.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment.  See Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001); Noble v. Schmitt, 87 F.3d 157, 162

(6th Cir. 1996).  Plaintiff, however, cannot show that Defendants' conduct in failing to advance him through the IISP program was an adverse action taken against him for filing grievances.  Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).  In this case, Plaintiff fails to allege any specific facts showing that Defendants' conduct was motivated by a desire to retaliate against him.  Therefore, his retaliation claims are properly dismissed.

The court notes that Defendant Mohrman was a hearing officer for the MDOC during the pertinent time period.  The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority.  *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255.  *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).  The court concludes that Defendant Mohrman is absolutely immune under the circumstances of this case.

Finally, Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City*

*Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendant Unknown Party Executive Director was personally involved in the activity which forms the basis of his claim.  The only role that Defendant Unknown Party Executive Director had in this action involved the denial of administrative grievances or the failure to act.  Defendant Unknown Party Executive Director cannot be liable for such conduct under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).  Accordingly, the Court concludes that Plaintiff's claims against Defendant Unknown Party Executive Director are properly dismissed for lack of personal involvement.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: _____10/26/2011_____        _____*/s/ R. Allan Edgar*_____
                                          R. Allan Edgar
                                          United States District Judge